IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

GALLERY COMMUNITY ASSOCIATION,

*Plaintiff/Appellant*,

*v.*

K. HOVNANIAN AT GALLERY, LLC, ET AL.,
*Defendants/Appellees.*

No. CV-24-0252-PR
Filed July 29, 2026

Appeal from the Superior Court in Maricopa County
The Honorable Katherine Cooper, Judge
No. CV2020-008714
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
261 Ariz. 291 (App. 2024)
**VACATED**

COUNSEL:

Craig S. Nuss, Penny J. Manship, Grace M. Osberg, Burg Simpson Eldredge
Hersh Jardine PC, Englewood, CO; and Robert G. Schaffer (argued), Robert
G. Schaffer PLC, Scottsdale, Attorneys for Gallery Community Association

Louis W. Horowitz, Lorber, Greenfield & Olsen, LLP, Phoenix; and Dennis
I. Wilenchik (argued), Garo V. Moughalian, Wilenchik & Bartness, P.C.,
Phoenix, Attorneys for K. Hovnanian at Gallery, LLC, K. Hovnanian
Arizona Operations, LLC

Mark A. Fuller, Gallagher & Kennedy, PA, Phoenix, Attorneys for Amici
Curiae Home Builders Association of Central Arizona and Southern
Arizona Home Builders Association

Andrew W. Gould, Emily Gould, Erica Leavitt, Holtzman Vogel, Baran Torchinsky & Josefiak, P.L.L.C., Phoenix, Attorneys for Amici Curiae Leading Builders of America and National Association of Home Builders

———————

JUSTICE MONTGOMERY authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, and PELANDER joined.[*] CHIEF JUSTICE TIMMER dissented, joined by JUSTICE KING.

JUSTICE MONTGOMERY, Opinion of the Court:

¶1 Under Arizona's common law, only a homeowner—either the original homebuyer or a subsequent purchaser—can sue for a breach of the implied warranty of workmanship and habitability concerning latent defects in the construction of a home. In this case, we must determine whether, by enacting A.R.S. § 33-2002, the Legislature has authorized a homeowners' association to bring such a suit regarding both common areas it owns and properties owned by individual homeowners. We hold that, because § 33-2002 and related statutes encompass a cause of action for construction defects arising out of a failure to adhere to community workmanship standards, the Legislature has modified the common law to authorize homeowners' associations to bring what constitutes an implied warranty suit.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 K. Hovnanian at Gallery, LLC ("Hovnanian") developed a residential community ("Community") composed of eighteen units in four residential buildings and common areas. Individual homebuyers purchased each unit. To manage the Community, Hovnanian created the Gallery Community Association ("Gallery"), a homeowners' association ("HOA"). Hovnanian also drafted and recorded a Declaration of Covenants, Conditions, Restrictions, and Easements ("CC&Rs").

———————

[*] Justice Maria Elena Cruz recused herself from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Retired) was designated to sit in this matter.

2

¶3        On October 6, 2016, Hovnanian conveyed the common areas to Gallery by a quitclaim deed, which the CC&Rs obligate Gallery to maintain.   The CC&Rs also provide that Gallery has control over, and the requirement to maintain, the exterior of the Community's units (for example, the units' exterior walls and roofs). [1]   However, it is the individual homeowners — not Gallery — who own the units' exteriors.

¶4        After discovering various alleged defects in the Community's common areas and in some of the units' exteriors, Gallery sued Hovnanian under A.R.S. §§ 12-1361 *et seq.* and 33-2001 *et seq.*   In its complaint, Gallery alleged that Hovnanian breached the implied warranty of workmanship and habitability by failing to perform its work in a workmanlike manner. Hovnanian successfully moved for summary judgment.

¶5        The trial court found that Gallery could not bring an implied warranty claim for either the common areas or the units' exteriors because the common areas are not residences and Gallery does not own the individual units.   The court further noted that Gallery's maintenance responsibility over the common areas and the units' exteriors was insufficient to create an implied warranty in its favor.   Instead, the court concluded that the implied warranty belonged to the individual homeowners.   Gallery appealed.

¶6        The court of appeals reversed.   *Gallery Cmty. Ass'n v. K. Hovnanian At Gallery, LLC*, 261 Ariz. 291, 293 ¶ 3 (App. 2024).   The court found that the plain language of § 33-2002(A), "[an HOA] may file [an HOA] dwelling action," "mean[s] just what it says."   *Id.* at 296 ¶ 22.   As for the elements of a dwelling action, the court found that Gallery's complaint alleged defects in workmanship that fell within the definition of a construction defect under § 12-1361(4)(c).   *Id.* ¶ 21.   Furthermore, given that both the definition under § 12-1361(4)(c) and the implied warranty address defects arising out of a failure to follow standards of workmanship, the court concluded that § 12-1361(4)(c) "integrates the implied warranty into statute."   *Id.* at 295–96 ¶ 20.   Lastly, consistent with a broad

---

[1]   The CC&Rs further provide that: "in no event shall an Owner apply any paint to the exterior of its Dwelling Unit, including, without limitation, window or other trim, doors, eaves, roof deck, fences or other exterior features or replace the exterior masonry or other surface installed by [Hovnanian]."

definition of dwelling under § 33-2001(2), *id.* at 296 ¶ 23, the court concluded that Gallery's complaint alleging construction defects in the common areas and individual units due to defective workmanship gave rise to a dwelling action as authorized by § 33-2002, *id.* ¶ 21.

¶7 Hovnanian petitioned this Court for review, which we granted because whether an HOA can bring an action for breach of an implied warranty of workmanship and habitability for common areas it owns and the exteriors of residential units it does not own is an issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶8 "'[W]e review a grant of summary judgment de novo,' viewing the facts in a light most favorable to the party against whom judgment was granted." *9W Halo OPCO, LP v. Ariz. Dep't of Revenue*, 261 Ariz. 393, 396 ¶ 9 (2026) (quoting *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021)). Likewise, we review the interpretation of statutes de novo. *Cao v. PFP Dorsey Invs., LLC*, 257 Ariz. 109, 113 ¶ 15 (2024).

¶9 Hovnanian argues that § 33-2002 does not create a cause of action for HOA implied warranty suits but rather establishes procedures that an HOA must follow to bring an existing cause of action for a construction defect, such as one under an express contract, a tort, or an assignment of rights for a breach of the implied warranty. Additionally, Hovnanian asserts that the property in question, common areas and unit exteriors, does not meet the statutory definition of a "dwelling" under § 33-2001 to bring an HOA dwelling action under § 33-2002.

¶10 Gallery asserts that the Legislature expressly granted HOAs the right to bring a cause of action under the Homeowners' Association Dwelling Actions ("HADA") statutes. *See* § 33-2001 *et seq.* As for the property in question, Gallery argues that the common areas and unit exteriors meet the plain language of the definition of a dwelling. The parties' arguments, therefore, raise issues of statutory construction.

¶11 "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (quoting *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9

(2018)).    To effectuate the text, "we interpret statutes according to their plain language," *id.*, giving "words 'their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended,'" *State v. Luviano*, 255 Ariz. 225, 228 ¶ 10 (2023) (quoting *Ariz. ex rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541 ¶ 7 (2018)).    And the text of a statute is not mere evidence of legislative intent—it is the "law that judges apply."    *State v. Marner*, 261 Ariz. 275, 280 ¶ 19 (2026), *as amended on reconsideration* (Feb. 26, 2026).    "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).

**¶12**        Without legislative authorization, however, an HOA could not bring an action for breach of the implied warranty under the facts of this case.

**A.   Common Law Implied Warranty Claims**

**¶13**        The implied warranty of workmanship and habitability "is an imputed term of the original purchase agreement," *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 59 ¶ 15 (2022), applies to contracts between builder-vendors and homebuyers, and is limited to latent defects, *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 245 (1984).    Thus, "[a] claim for breach of the implied warranty sounds in contract."    *Sirrah Enters., LLC v. Wunderlich*, 242 Ariz. 542, 545 ¶ 11 (2017) (alteration in original) (quoting *Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr., Inc.*, 218 Ariz. 574, 575 ¶ 5 (2008)).    Accordingly, the general rule is that "only the parties and privies to a contract may enforce" the implied warranty.    *Lofts*, 218 Ariz. at 575 ¶ 5 (quoting *Treadway v. W. Cotton Oil & Ginning Co.*, 40 Ariz. 125, 138 (1932)).

**¶14**        Here, Gallery is neither a party nor privy to a contract for the construction or purchase of residential homes within the Community.    In addition, the CC&Rs do not contain a warranty for workmanship and habitability.    And although we have recognized two exceptions to the privity requirement, neither exception applies to Gallery.    *See Richards*, 139 Ariz. at 245 (holding "that privity is not required to maintain an action for breach of the implied warranty of workmanship and habitability" where the homeowner was a subsequent purchaser of the home); *Lofts*, 218 Ariz.

at 577 ¶ 17 (holding that the implied warranty is enforceable by a homebuyer against the builder even in the absence of a direct contractual relationship).   Therefore, under the common law, Gallery does not have a cause of action for breach of the implied warranty for either the common areas or the residential units.

**¶15**        However, "so long as it acts within its constitutional boundaries, the [L]egislature may modify or abrogate court-made common law."   *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 9 (2023).   Nevertheless, "if the common law is to be changed, supplemented, or abrogated by statute, it must be done expressly or by necessary implication."   *Id.* (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991)). We, therefore, turn to consider whether the Legislature did so in enacting § 33-2002.

## B.   HOA Cause of Action

### 1. Section 33-2002.

**¶16**        Section 33-2002(A) provides: "Notwithstanding any provision to the contrary in title 10, chapter 39 or chapter 9 or 16 of this title[2] and in addition to any requirements prescribed in the community documents of [an HOA], [an HOA] may file [an HOA] dwelling action only after all of the following have occurred . . . ."   Hovnanian focuses on the phrase "only after" to argue that § 33-2002 establishes necessary conditions to bring an existing cause of action for construction defects and therefore does not grant any substantive cause of action.   In contrast, Gallery asserts that § 33-2002 authorizes an implied warranty cause of action with the required conditions.

**¶17**        Reading the text as a whole, we agree with Hovnanian that it imposes conditions an HOA must satisfy before bringing a dwelling action,

---

[2]   The notwithstanding language renders our dissenting colleagues' efforts to limit HADA through comparison to the Condominium Act—chapter 9, title 33—unavailing.   *Infra* ¶¶ 49–50.

which Gallery indisputably satisfied.[3]   But Hovnanian's focus on "only after" overlooks the phrase "may file."   Additionally, Hovnanian's argument does not resolve whether § 33-2002 authorizes an HOA to bring an implied warranty cause of action.   To answer that, we begin our analysis with the phrase "may file."

**¶18**       As the court of appeals correctly observed in *Sullivan v. Metro Prods., Inc.*, 150 Ariz. 573, 578 (App. 1986), "[t]he word 'may' is an auxiliary verb to the verb 'file' and serves to permit [a] private cause of action."   *See also Hannosh v. Segal*, 235 Ariz. 108, 111 ¶ 7 (App. 2014) (interpreting A.R.S. § 13-2314.04(A) which then provided that "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering . . . may file an action in superior court").   And our Court has recognized statutory causes of action using the phrase "may file." *See Est. of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 527 ¶ 5 (2002) (recognizing that "[t]he [L]egislature created [a] cause of action" in a statute which uses the phrase "may file an action"); *Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 313 ¶ 17 (2017) (same).   Moreover, § 33-2002(B) also refers to "*the right* of [an HOA] to bring [an HOA] dwelling action."[4] (Emphasis added.)   Thus, § 33-2002 authorizes an HOA "dwelling action." We next consider what constitutes an HOA dwelling action.

---

[3]   Section 33-2002(A)(1)–(4) lists what an HOA must do: (1) notify its members of the action; (2) hold a meeting of its members and board of directors; (3) obtain authorization from the board of directors to file the action; and (4) provide the seller with the ability to remedy the defects giving rise to the action.   These statutory conditions ensure that (1) all members of the association receive notice of the filing of the action, and that (2) the builder is given notice of the alleged construction defects and the right to remedy the alleged defects.

[4]   The tolling provision under § 33-2002(B) does not create the issue our dissenting colleagues suggest, nor does it "confirm" a contrary reading of § 33-2002(A).   *Infra* ¶ 40.   The tolling provision addresses a statute of limitations issue that may or may not be present in an implied warranty cause of action.   *See* A.R.S. § 12-552.   And our holding does not preclude the application of the tolling provision to causes of action that existed before the enactment of HADA.

2. Dwelling action defined.

¶19 Under § 33-2001(5), an "'[HOA] dwelling action' means any action involving a construction defect as defined in § 12-1361 filed by [an HOA] against the seller of a dwelling arising out of or related to the design, construction, condition or sale of the dwelling." Relevant here, § 12-1361(4)(c) defines a "construction defect" as "a material deficiency in the design, construction, manufacture, repair, alteration, remodeling or landscaping of a dwelling that is the result of . . . [t]he *failure to adhere to generally accepted workmanship standards in the community*." (Emphasis added.) Notably, this definition of a construction defect is coextensive with what the implied warranty addresses: "the implied warranty protects against a builder's lack of conformity with generally accepted community standards for workmanship and habitability." *Zambrano*, 254 Ariz. at 63 ¶ 31; *see also Richards*, 139 Ariz. at 244 (stating that "builder-vendors of new homes [are] held to impliedly warrant that construction has been done in a workmanlike manner and that the structure is habitable").

¶20 Section 33-2002(A) states that an association "may file a homeowners' association dwelling action." Section 33-2001(5) defines that action as one involving a construction defect as defined in § 12-1361. And § 12-1361(4)(c) defines a "construction defect" as a material deficiency resulting from a code violation, defective materials, or "the failure to adhere to generally accepted workmanship standards in the community." The foregoing statutory provisions, read together, establish the authority to bring what mirrors an implied warranty cause of action, the conditions an HOA must satisfy to bring it, and the particular bases on which it can be brought. The Legislature thus did more than describe a pre-existing category of litigation. It affirmatively provided that an association "may file" a defined action to remedy construction defects. *Cf. Napier v. Bertram*, 191 Ariz. 238, 240 ¶ 9 (1998) (noting that silence regarding a right of action "is not dispositive" and "begins, rather than ends, our inquiry" in holding a right of action existed where a statute lacked affirmative language authorizing a cause of action).

¶21 Therefore, by authorizing an HOA dwelling action for construction defects that encompass latent defects covered by the implied warranty of workmanship and habitability, the Legislature has authorized an HOA to bring the same kind of cause of action as one for a breach of the implied warranty. But whether Gallery can bring this suit for the property

in question still depends on other HADA provisions.

### 3. Dwellings.

**¶22**　　　　Section 33-2001(2) defines a "dwelling" as "a newly constructed single family or multifamily unit designed for residential use and property and improvements that are either owned by [an HOA] or jointly by all of the members of [an HOA]." Therefore, each property identified in Gallery's complaint—the common areas and the individually owned units—must qualify as a "dwelling" for Gallery to bring its HOA dwelling action. *See* § 33-2001(5).

**¶23**　　　　Hovnanian argues that the phrase "owned by [an HOA] or jointly by all of the members of [an HOA]" applies to each type of specified dwelling, so a "dwelling"—newly constructed residential units, property, and improvements—must be owned by an HOA or jointly by all its members. Hovnanian thus posits that the units' exteriors are not dwellings because they are owned by individual unit owners. At most, according to Hovnanian, the common areas might constitute a dwelling. Gallery reads § 33-2001(2) to define a dwelling as either "[1] a newly constructed single family or multifamily unit designed for residential use" or "[2] property and improvements that are either owned by [an HOA] or jointly by all of the members of [an HOA]."

**¶24**　　　　We read words in statutes in context to determine their meaning. *State Farm Auto. Ins. Co. v. Orlando*, 259 Ariz. 531, 534 ¶ 10 (2025). Accordingly, because Gallery undisputedly owns the common areas, they are "dwellings" under the statutory definition. However, because each individual homeowner owns the units, the units' exteriors can only be considered "dwellings" if § 33-2001(2) does not require ownership by Gallery or jointly by all of Gallery's members.

**¶25**　　　　These arguments invoke the last-antecedent rule, which "requires that a qualifying phrase be applied to the word or phrase immediately preceding as long as there is no contrary intent indicated." *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 306 ¶ 24 (2004) (quoting *Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 165 Ariz. 31, 34 (1990)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012) (discussing the last-antecedent rule). Here, the phrase "property and improvements" immediately precedes the

phrase "that are either owned by [an HOA] or jointly by all of the members of [an HOA]." The ownership requirement, therefore, only applies to "property and improvements." It does not extend to "newly constructed single family or multifamily unit[s] designed for residential use."

¶26 If the ownership phrase did extend to newly constructed residential units, then because "property" necessarily encompasses "newly constructed single family or multifamily unit[s] designed for residential use," the latter phrase would be rendered meaningless and duplicative. Put differently, if § 33-2001(2)'s ownership requirement applied to each specifically enumerated type of property—residential units, property, and improvements—then the statute's meaning would not change if the phrase "newly constructed single family or multifamily unit[s] designed for residential use" were deleted. And that is not how we read statutes. *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143 ¶ 10 (2008) (noting that this Court "avoid[s] interpretations that render statutory provisions meaningless, unnecessary, or duplicative"); *Adams v. Bolin*, 74 Ariz. 269, 276 (1952) (explaining when interpreting a provision, "each word, phrase, clause[,] and sentence must be given meaning so that no part will be void, inert, redundant[,] or trivial").

¶27 Therefore, "a newly constructed single family or multifamily unit designed for residential use" is a "dwelling" under § 33-2001(2), even if not owned by an HOA or jointly by its members. Accordingly, the Legislature has, by necessary implication, abrogated the common law ownership requirement for residential units in an HOA dwelling action. In sum, § 33-2002 and related statutory provisions authorize Gallery's suit against Hovnanian.

## C. Other Considerations

¶28 Hovnanian asserts that interpreting § 33-2002 as creating a cause of action impermissibly abrogates the common law by eliminating the ownership requirement for an implied warranty claim. We disagree for two reasons. First, § 33-2002(A) does preserve an ownership requirement in part, given the definitions of "dwelling action" and "dwelling." As noted, a dwelling action is limited to dwellings. And for a dwelling to be the subject of an HOA dwelling action, it must be property that an HOA (1) owns or (2) whose owners it effectively represents by requiring joint ownership by all members of the HOA. Second, although

§ 33-2002(A) does modify the common law to the extent it eliminates the ownership requirement for residential units, this result is consistent with the Legislature's authority to modify the common law by statute. *See Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422 ¶ 12 (2004).

**¶29** Finally, amici curiae Home Builders Association of Central Arizona and Southern Arizona Home Builders Association suggest that § 33-2002 does not give HOAs the ability to bring claims for construction defects in cases like this because the Legislature has expressly declined to enact a law that would achieve a similar outcome. *See* H.B. 2575, 56th Leg., 2d Reg. Sess. (Ariz. 2024). But "[l]egislative history is not a substitute for clear legislative language." *In re McLauchlan*, 252 Ariz. 324, 326 ¶ 15 (2022); *see also City of Flagstaff v. Mangum*, 164 Ariz. 395, 401 (1990) ("Rejection by the house or senate, or both, of a proposed bill is an unsure and unreliable guide to statutory construction."). We, therefore, decline to rely on the referenced legislative inaction for our analysis.[5]

## D. *Zambrano*, the Purchaser Dwelling Act, and HADA

**¶30** The court of appeals stated that this Court recently held in *Zambrano* that § 12-1362(A) and (B) provides a procedure for purchaser dwelling actions, but does not create a cause of action. *Gallery*, 261 Ariz. at 297 ¶ 25; *see also Zambrano*, 254 Ariz. at 62 ¶ 27 (stating that the Purchaser Dwelling Act ("PDA") " does not itself provide a legal cause of action"). And our dissenting colleagues rely on this holding, as well, which renders the dissent's analysis and conclusion unsurprising. *Infra* ¶¶ 38, 51–54. The parties also cite *Zambrano* for various propositions.

---

[5] If we were to consider HADA's legislative history, it confirms our current reading of the statutes. *See* Ariz. State Senate Fact Sheet for H.B. 2668, 44th Leg., 1st Reg. Sess. (Mar. 19, 1999) ("Defines 'homeowners' association dwelling actions' as an action filed by a homeowners' association against the seller of a dwelling arising out of or related to the design, construction, condition or sale of the dwelling."); Ariz. State Senate Fact Sheet for H.B. 2578, 52d Leg., 1st Reg. Sess. (Mar. 5, 2015) ("Statute permits an HOA to file a homeowners' association dwelling action against a seller for issues related to the design, construction, condition or sale of dwellings (A.R.S. § 33-2002)."); Ariz. House Fact Sheet for H.B. 2578, 52d Leg., 1st Reg. Sess. (Mar. 25, 2015) ("Provides that a *homeowners' association dwelling action* includes a dwelling action related to a construction defect.").

¶31          Hovnanian notes that *Zambrano* limited the implied warranty to the circumstances of a sales contract between a seller of real estate and a homebuyer, which is extended to subsequent purchasers.   Additionally, Hovnanian observes that *Zambrano* was silent about an HOA "having any such right by statute or otherwise" to bring an implied warranty cause of action.   Gallery asserts that *Zambrano*'s public policy rationale affirmatively supports permitting an HOA to bring an implied warranty cause of action.   We first consider whether *Zambrano*'s purported holding that the PDA does not create a cause of action should control our analysis here.

¶32          First, *Zambrano* held no such thing.   The question there was "whether a builder-vendor and a homebuyer may agree to disclaim and waive the implied warranty if they replace it with an express warranty." *Zambrano*, 254 Ariz. at 57 ¶ 3.   And we only held that "public policy prohibits enforcement of the disclaimer and waiver."   *Id.*   We even expressly reserved the broader common-law question of "[w]hether Arizona should continue to imply a warranty" by stating that it was "not before us."   *Id.*   The disposition also reflects our narrow holding.   We held the disclaimer void as contrary to public policy and remanded.   *See id.* at 66 ¶ 50.

¶33          The statement that the court of appeals referenced and our dissenting colleagues rely on—the PDA "does not itself provide a legal cause of action for such lawsuits"—appears in *Zambrano*'s public-policy analysis explaining why permitting waiver would leave a homebuyer without a remedy.   *Id.* at 62 ¶ 27.   It was an observation offered to measure the stakes of the waiver question, not a holding on the authorization question now before us, and it addressed the PDA provisions, §§ 12-1361 and 12-1362, not HADA.   *Id.*   We decline to extend a supporting argument for a holding about one statute to resolve a distinct and specific question about another.

¶34          Moreover, § 33-2002, unlike § 12-1362, expressly provides that an HOA "may file" an HOA dwelling action, whereas § 12-1362 merely provides that "a purchaser must first comply with this article before filing a dwelling action."   Thus, the PDA lacks the language we have recognized as authorizing a cause of action.   Additionally, as the court of appeals noted, "[HADA and the PDA] are importantly non-analogous."   *Gallery*, 261 Ariz. at 297 ¶ 25.

12

¶**35** So too with *Zambrano*'s description of the Legislature as having "approved" rather than "codified" the warranty. 254 Ariz. at 60 ¶ 17. That observation fits the purchaser context: a homebuyer already holds the common-law warranty under the purchase contract, so the PDA only needs to accommodate a pre-existing claim. *Compare* 2002 Ariz. Sess. Laws ch. 281, §§ 1–2 (2d Reg. Sess.) (enacting § 12-1361 *et seq.*), *with Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 515 (1984) (recognizing that "negligent construction of a residence may give rise to an action for breach of the implied warranty of workmanlike performance and habitability and an action for breach of the contractor's common law duty of care"). The HADA addresses a different actor in a different posture, and we read its terms accordingly. Therefore, *Zambrano*'s holding does not preclude our conclusion that the Legislature authorized an HOA dwelling action, and the parties' reliance on it is misplaced.

## CONCLUSION

¶**36** Reading the respective provisions of HADA *in pari materia*, we conclude that the statutory scheme enacted by the Legislature has modified the common law to the extent that an HOA may sue for what constitutes a breach of the implied warranty of workmanship and habitability without requiring privity between an HOA and a builder-vendor or ownership of the residential units. Because Gallery complied with the procedural requirements of § 33-2002 and viewing the alleged facts in the light most favorable to it, we hold that Gallery is authorized to bring an HOA dwelling action for construction defects in the common areas and unit exteriors based on Hovnanian's alleged failure to perform its work in a workmanlike manner.

## DISPOSITION

¶**37** We reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this Opinion. Accordingly, we deny Hovnanian's request for attorney fees under § 12-341.01 as it is not the prevailing party at this point. Although we agree with the court of appeals' result, we vacate its opinion and replace its reasoning with our own.

TIMMER, C.J., joined by KING, J., dissenting:

**¶38**        Just four years ago, in *Zambrano v. M & RC II LLC*, this Court held that the Purchaser Dwelling Act ("PDA"), A.R.S. §§ 12-1361 through -1366, "does not itself provide a legal cause of action" for construction defects.    254 Ariz. 53, 62 ¶ 27 (2022).    Today's majority reaches the opposite conclusion about the related Homeowners' Association Dwelling Actions statutes ("HADA"), A.R.S. §§ 33-2001 through -2003.    *Zambrano* does not control the outcome here because it addresses the PDA, not the HADA.    But for several reasons, I conclude, consistent with *Zambrano*, that the HADA only establishes procedures a homeowners' association ("HOA") must satisfy before filing a lawsuit involving any existing cause of action involving a construction defect.    The HADA itself does not create a new cause of action.

**¶39**        First, the majority places undue and decisive weight on § 33-2002's use of the phrase "may file."    *See supra* ¶¶ 17-18.    That statute provides that, "in addition to any requirements prescribed in the community documents of a homeowners' association, a homeowners' association may file a homeowners' association dwelling action only after all of the following have occurred," and then sets out four procedural prerequisites focused on member notice and approval and giving the seller the opportunity to make repairs.    § 33-2002(A).    The statute's entire structure addresses only when and how an HOA dwelling action may proceed.    *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (agreeing that a statute should be read "to consider the entire text, in view of its structure and of the physical and logical relation of its many parts" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))).    It does not define or grant a statutory cause of action.    An HOA "may file" only after satisfying preconditions drawn from both the community documents and the statute.    That is the structure of a procedural gatekeeping statute, not one granting substantive rights.

**¶40**        Section 33-2002(B) confirms this reading.    It tolls "a statute of limitations affecting the right of the association to bring a homeowners' association dwelling action" when the required member notice is provided fewer than sixty days before the limitation period's expiration.    The indefinite article — "a statute of limitations" rather than "the statute of limitations" — presupposes that different limitations periods may apply

14

depending on the underlying cause of action. A legislature creating a new statutory cause of action would have specified a single period, not several periods.

**¶41** The majority acknowledges as much by conceding that § 33-2002(B) applies to multiple causes of action an HOA may have the right to bring. *See supra* ¶ 18 n.4. That concession entirely undermines the majority's reasoning. If subsection (B) contemplates that an HOA holds pre-existing rights to bring multiple types of claims, then subsection (A)'s conditional authorization to file a dwelling action is fully explained by permitting the HOA to pursue those pre-existing claims after satisfying the procedural conditions—no new cause of action is needed to give the language meaning. And where existing causes of action supply a ready explanation for the statutory text, there is no necessary implication that the Legislature enacted the HADA to modify the common law implied warranty claim. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 9 (2023) ("This Court has established that 'if the common law is to be changed, supplemented, or abrogated by statute, it must be done expressly or by necessary implication.'" (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991))).

**¶42** The majority cites *Est. of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 527 ¶ 5 (2002), and *Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 313 ¶ 17 (2017), for the proposition that statutes using "may file" create a cause of action, but neither case announced that rule. *See supra* ¶ 18. Both concerned A.R.S. § 46-455(B), which created a cause of action under the Adult Protective Services Act by providing that a neglected, abused, or exploited incapacitated or vulnerable adult "may file an action in superior court" against listed caregivers. *See McGill*, 203 Ariz. at 527 ¶ 5; *Delgado*, 242 Ariz. at 313 ¶ 17. The statute then specified who may sue, identified exemptions from liability, enumerated available remedies and equitable orders, established a limitations period, and defined key terms. *See* § 46-455(C)–(Q). In *McGill*, this Court only addressed the elements of that cause of action under § 46-455; the phrase "may file" played no role and was never even mentioned in its analysis. *See* 203 Ariz. at 527–28 ¶¶ 5–7. The same is true of *Delgado*. 242 Ariz. at 313 ¶ 17.

**¶43** Similarly, the two court of appeals opinions cited by the majority do not establish that "may file" is a self-sufficient indicator that the

Legislature created a cause of action in the HADA. *See supra* ¶ 18. In *Sullivan v. Metro Prods., Inc.*, the court of appeals interpreted "may file" in a prior version of A.R.S. § 13-2314(A)—Arizona's civil racketeering statute—and held that the word "may" was an auxiliary verb modifying "file," serving only to authorize the private cause of action the Legislature had already expressly created. 150 Ariz. 573, 577–78 (App. 1986). In *Hannosh v. Segal*, the court construed the then-applicable private-action provision in § 13-2314.04(A) and held that, despite its "may file" language, a plaintiff could not sue unless he first alleged a qualifying substantive injury—an injury to person, business, or property. 235 Ariz. 108, 113–14 ¶¶ 13–21 (App. 2014). Both cases show that "may file" carries its full meaning only in relation to the substantive rights and injury requirements surrounding it.

¶44        The statutes at issue in *Sullivan* and *Hannosh* are readily distinguishable from § 33-2002(A). Unlike the HADA, Arizona's civil racketeering statute was enacted expressly to create a private right of action, defined the predicate acts giving rise to liability, and specified the remedy available to a successful plaintiff. *See* § 13-2314.04(A). Section 33-2002(A) does none of that. The "may file" language in the HADA operates only to set the timing of an existing action, not to bring one into existence.

¶45        Statutory context rather than isolated phrasing controls. *See Nicaise*, 245 Ariz. at 568 ¶ 11. Section 46-455(B), captioned "civil remedy," as well as former § 13-2314(A) and § 13-2314.04(A), both captioned "civil remedies," use "may file" to authorize substantive rights the Legislature expressly created. Section 33-2002(A), captioned "conditions," uses the same phrase to tell an HOA when it may proceed, not to confer a right that did not previously exist. A statute that creates a cause of action does not look like § 33-2002(A).

¶46        Second, the answer to whether the HADA creates a cause of action lies not in the phrase "may file" but in what the statute means by "a homeowners' association dwelling action." *See* § 33-2002(A). Section 33-2001(5) defines the term as "any action involving a construction defect." "Any" signals that the HADA operates across pre-existing causes of action—breach of contract, breach of an express warranty, assignment of rights—rather than creating one of its own. If the Legislature had expressly established a new cause of action in the HADA, as the majority

contends, it would have defined the particular right and its elements. It did neither but instead generically referred to "any action." That omission answers the question.[6]

¶47　　　The majority puts undue weight on the statutory definition of "construction defect" to argue that the Legislature necessarily modified the common law to authorize HOAs to file implied warranty claims concerning common areas it owns and properties owned by individual homeowners. *See supra* ¶¶ 19–21. Because § 12-1361(4)(c) defines a construction defect to include a failure to "adhere to generally accepted workmanship standards in the community"—language that also generally describes the implied warranty's scope, *see Zambrano*, 254 Ariz. at 59 ¶ 14, 62 ¶ 27—the majority concludes that the HADA's cross-reference to that definition authorizes HOAs to bring "what mirrors an implied warranty cause of action." *See supra* ¶¶ 19–21. But the use of workmanship language in a definitional provision does not transform a procedural statute into a substantive one.

¶48　　　The workmanship standard is not unique to the implied warranty. That same language may appear in express warranties and in contracts, which may coexist with the implied warranty without displacing it. *See Zambrano*, 254 Ariz. at 60 ¶ 16 ("[T]he warranties are not mutually exclusive."). It also defines the standard of reasonable care that underlies negligence claims against builders. *See Woodward v. Chirco Const. Co., Inc.*, 141 Ariz. 514, 516 (1984). And it appears in entirely separate statutory contexts having nothing to do with the implied warranty. *See, e.g.*, A.R.S. § 32-1154(B)(2) (requiring the registrar of contractors to investigate a complaint of loss or injury from "a contractor's failure to perform work in a professional and workmanlike manner or in accordance with any applicable building codes and professional industry standards"). An HOA may also pursue workmanship defects through implied warranty claims assigned to it by individual homeowners, *see Pointe 16 Cmty. Ass'n v. GTIS-HOV Pointe 16, LLC*, 260 Ariz. 377, 383 ¶ 30 (2025), which does not depend on the HADA changing the common law claim. At bottom,

---

[6]　Notably, counsel for Gallery Community Association agreed at oral argument that § 33-2002(A) does not create a statutory cause of action. He argued instead that the provision gives HOAs standing to bring a claim on behalf of homeowners. The majority adopts neither party's characterization of the statute.

because the workmanship standard pervades construction law generally, its appearance in a definitional cross-reference cannot bear the weight the majority places on it. The definition describes the subject matter of covered actions; it does not identify who holds the right to bring them or on what legal theory. A statutory framework that leaves the cause of action itself unnamed and its elements unspecified has not created one.

¶49 Third, comparing § 33-2002(A) to related statutes reinforces my interpretation. The Condominium Act, A.R.S. §§ 33-1201 through -1270, explicitly authorizes a condominium association to "[i]nstitute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." § 33-1242(A)(4). That express authorization is absent from the HADA. Because the HADA's definition of "homeowners' association" encompasses both planned community and condominium associations, *see* § 33-2001(4), the majority's interpretation renders the Condominium Act's express grant of authority superfluous. Courts construe related statutes together and avoid interpretations that render any provision superfluous. *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143 ¶ 10 (2008).

¶50 The majority asserts that § 33-2002(A)'s "notwithstanding any provision to the contrary" clause renders this point unavailing. *See supra* ¶ 16 & n.2. It does not. The "notwithstanding" clause overrides only contrary provisions—those that cannot operate alongside § 33-2002(A). The Condominium Act's authorization for a condominium association to institute litigation is not contrary to § 33-2002(A)'s procedural prerequisites; the two provisions operate in tandem, with the former authorizing suit and the latter conditioning when that suit may be filed. Because the Condominium Act's grant is not displaced, it retains independent meaning; but under the majority's reading, it has none.

¶51 Fourth, the majority's distinction of *Zambrano* is misplaced. It initially acknowledges *Zambrano*'s conclusion that the PDA does not itself provide a legal cause of action, but brushes that aside by stating that this was simply "an observation" and "not a holding." *See supra* ¶ 33. But this was not a throwaway statement. That conclusion was, in fact, integral to the Court's analysis because it demonstrated that eliminating the common law implied warranty would have left no legal cause of action to remedy the construction defects identified in the PDA. *See Zambrano*,

254 Ariz. at 62 ¶ 27.   If the PDA provided a cause of action outside the common law, we would not have needed to analyze the implications of eliminating the common law claim.

¶52        The majority next distinguishes *Zambrano* because that case concerned the PDA, which lacks the "may file" language in the HADA. *See supra* ¶ 34.   The PDA, however, resembles the HADA in establishing procedural prerequisites for filing construction defect actions, and this Court held that the PDA did not itself create a cause of action.   *See Zambrano*, 254 Ariz. at 62 ¶ 27.   That holding is difficult to square with the majority's reasoning here.   The PDA provides that "[a] purchaser may not file a dwelling action" until intended repairs have been completed, A.R.S. § 12-1362(B)—meaning that once repairs are completed, a purchaser may file.   If the majority is correct that "may file" creates a cause of action, the same logic would require reading the PDA to create one as well.   *Zambrano* rejected that conclusion, and the majority offers no principled basis for interpreting the two statutes differently.

¶53        The majority also argues that *Zambrano* is distinguishable because the PDA and HADA are "non-analogous."   *See supra* ¶ 34. Because purchasers already possessed the implied warranty by virtue of the purchase contract, the majority reasons, the PDA only needed to accommodate a pre-existing cause of action.   *See supra* ¶ 35.   But because the common law does not grant an HOA an implied warranty right, the majority concludes, the HADA "addresses a different actor in a different posture" and must have created one.   *See supra* ¶ 35.

¶54        This distinction does not hold.   That the common law had not extended the implied warranty to HOAs shows only that the Legislature was acting against a different backdrop, not that it was changing the common law by extending the warranty to a new class of plaintiffs.   That inference is particularly weak given that the Legislature has never codified the implied warranty claim even for purchasers, choosing instead to regulate procedures while leaving the substantive doctrine to the courts.   Moreover, the majority's syllogism—no HOA implied warranty right existed, therefore the HADA must have created one—holds water only if breach of the implied warranty were the only cause of action available to an HOA for construction defects.   It was not.

¶**55**        When the Legislature enacted the HADA, HOAs had viable theories to pursue construction defect claims: negligence for damage to HOA-owned property, *see Woodward*, 141 Ariz. at 515–16 (recognizing builder's common law duty of care in construction of residential property); *Sierra Madre Dev., Inc. v. Via Entrada Townhouses Ass'n*, 20 Ariz. App. 550, 551 (1973) (involving HOA-brought negligence claim against developer for construction defects in common areas); breach of contract or express warranty when a contract exists between the HOA and the builder-vendor, *see U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 477–78 (App. 1989) (resolving an insurance duty-to-defend action involving an HOA's claim against a roofing contractor for breach of contract and unjust enrichment); *Sierra Madre Dev.*, 20 Ariz. App. at 552 (involving HOA-brought breach of contract claim against developer for construction defects in common areas); and assignment of homeowners' implied warranty claims through the Condominium Act or otherwise, *see* § 33-1242(A)(4); *Pointe 16 Cmty. Ass'n*, 260 Ariz. at 383 ¶ 30 (recognizing an HOA's ability to pursue construction defect claims through assignment of homeowners' claims under the implied warranty of workmanship and habitability); *Webb v. Gittlen*, 217 Ariz. 363, 364 ¶ 6 (2008) (stating unliquidated non-personal injury claims are generally assignable). The HADA's procedural requirements operate meaningfully across each of those theories without the HADA itself creating a new cause of action. The majority never addresses these alternatives. Its syllogism skips over them entirely.

¶**56**        Properly framed, the Legislature's silence on the implied warranty, in a statute captioned "conditions" and enacted against a backdrop of available alternative theories, is not authorization for a new claim that changes the common law implied warranty claim. If the Legislature had extended a claim for breach of the implied warranty to HOAs, thereby significantly modifying a doctrine this Court carefully confined to purchasers and their successors, it would have done so expressly or by necessary implication. *See Columbus Life Ins. Co.*, 255 Ariz. at 385 ¶ 9 ("[I]f the common law is to be changed, supplemented, or abrogated by statute, it must be done expressly or by necessary implication." (quoting *Wyatt*, 167 Ariz. at 284)). The Legislature did not do so expressly in the HADA, and the existence of other available HOA theories forecloses any necessary implication here. *See id.*

¶**57**　　　　Fifth, and finally, even if the language in the HADA is ambiguous, the legislative history supports that the Legislature did not create a cause of action.　The fact sheet for the bill enacted as the HADA states its purpose as "[r]equir[ing] homeowners' association boards to inform their members about possible litigation" and to "protect[] members of associations boards from personal liability if they act in good faith." Arizona State Senate, Fact Sheet for H.B. 2668 (Mar. 9, 1999); *see also* Arizona House of Representatives, Abstract for H.B. 2668 (1st Reg. Sess. 1999) (describing the bill as "outlin[ing] procedures for homeowners' associations' actions for activities relating to newly constructed units"). The majority's reliance on other language in that fact sheet defining a homeowners' association dwelling action as one against the seller "arising out of or related to the design, construction, condition or sale of the dwelling" does not express or imply the creation of a new cause of action. *See supra* ¶ 29 n.5.　Nothing in the legislative history supports a conclusion that the Legislature created a new cause of action.

¶**58**　　　　The majority's additional reliance on later fact sheets does not change the analysis.　*See supra* ¶ 29 n.5.　When the Legislature amended the HADA, fact sheets described it as permitting HOAs to file a homeowners' association dwelling action.　*See supra* ¶ 29 n.5.　But that description is entirely consistent with my interpretation because permitting an HOA to file an action after satisfying conditions is precisely what a procedural authorization statute does.

¶**59**　　　　In sum, Gallery has neither a statutory claim to assert under the HADA nor a common law right to assert the implied warranty for defects in property owned by it or others.　Because the HADA does not create a cause of action, I would not reach whether the unit exteriors satisfy § 33-2001(2)'s definition of "dwelling."　That question only arises if an HOA has a cause of action to bring in the first place.　I would affirm the superior court's summary judgment.　With enduring respect for my colleagues, I dissent.